**Felix C. NORDLINGER et al.,
Respondents,**

**v.**

**William J. SCHELLHORN et al., Constituting the Board of Trustees of the Village of Country Club, Missouri, Appellants.**

**No. WD 31491.**

Missouri Court of Appeals,
Western District.

March 2, 1981.

Kim Loving, St. Joseph, for appellants.

Stanley I. Dale, Candace J. Barnes, St. Joseph, for respondents.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

This suit for declaratory judgment arose out of the establishment of sewer districts in the Village of Country Club, Andrew County. Plaintiffs, who own improved residential lots in the village, sought a declaration that ordinances setting the boundaries of sewer districts were arbitrary and discriminatory because plaintiffs were thereby denied practical access to a common sewer system. The trial court so found and directed that sewers be provided. The village and its board of trustees appeal.

The Village of Country Club is a suburban community with a population of approximately one thousand and adjoins the north boundary of St. Joseph. Village affairs are conducted by a board of trustees. Plaintiffs' lots in the village are part of a subdivision known as Hurst Hills which contains one hundred ten homes. Plaintiffs own nine of these residences located in the eastern portion of the subdivision and adjacent to Business Loop 29, an interstate highway. The highway is also the east boundary both of Hurst Hills and of the village.

When the homes in Hurst Hills were first built, no central sewage disposal system was available. Each residence disposed of sewage by a septic tank and lateral absorption fields individually constructed and maintained. In time, however, some lot areas, particularly in the lower ground, became saturated and the septic tank systems were no longer effective. Stagnant pools of sewage were standing in some areas, sewage was bubbling to the surface and some residents of Hurst Hills were compelled to restrict use of plumbing facilities.

Plaintiffs' lots at all material times actually suffered from none of the sewage disposal problems which affected lots to the west, a circumstance attributable in part to the terrain. The septic tanks at plaintiffs' homes have continued to serve in a reasonably satisfactory manner. At a future date, sewers may be a necessity and the value of plaintiffs' property will be influenced by the availability of a common sewer system.

Plans for construction of sanitary sewers in Hurst Hills were first undertaken seriously early in 1979. The engineer consulted as to sewer design advised the village trustees that the most economical and satisfactory sewer system is one which relies entirely on gravity flow. To secure the benefit of gravity, the lateral collection sewers, the main sewer and the ultimate point of discharge must be planned and located so that no mechanical device is needed to force the sewage from one point to another. In Hurst Hills, the contour of the ground requires generally that drainage be from the north to the south.

Plaintiffs' lots do not adapt to the drainage pattern of the remaining lots in the subdivision. This easterly area naturally drains to the east and if included in a common sewer system with the remainder of the subdivision, the sewage from plaintiffs' homes would not flow by gravity but would require a mechanical force to propel it to the ultimate point of discharge on the south boundary of the subdivision.

Two types of equipment were available to accomplish the transfer of sewage from plaintiffs' lots to the main subdivision sewer, a lift station or individual grinder pumps. A lift station consists of a manhole into which sewage drains and collects and is then propelled into the main sewer line by pumps automatically activated when the sewage in the manhole reaches a predetermined level. A grinder pump is much like a garbage disposal. The solids in the sewage are reduced to small particles by grinding and the material is then pumped into the

sewer main. Both lift stations and grinder pumps force sewage to flow by pumping action, but a lift station handles larger material and greater volume and is therefore rated at greater capacity.

After meetings with residents of Hurst Hills and after considering reports and alternate proposals by the engineer for construction of sewers, the village trustees adopted Village Ordinance No. 79. This ordinance established the Hurst Hills Sewer District, the boundaries of which corresponded with the boundaries of the subdivision and included plaintiffs' lots. Subsequent controversy developed, however, as to what method would be used to provide the force necessary to transfer the sewage to the main gravity system from plaintiffs' homes and from three other residences nearby.

The engineer recommended that individual grinder pumps be installed in each of the twelve homes. Plaintiffs opposed this option because they would be obligated to pay the cost of electricity to operate the pumps and subsequent repair and replacement of the pumps would also be at their individual expense. In this respect, plaintiffs contended that the cost to them for sewers would be greater than would be the cost to other home owners in Hurst Hills. Plaintiffs favored construction of a lift station at the common collection point for the twelve homes. As a sewer district facility, the lift station would be maintained at common expense chargeable to all home owners in the subdivision and plaintiffs would thereby be relieved of the expense associated with the use of grinder pumps. A lift station is technically more effective but is more costly.

The increased cost attributable to substitution of a lift station for individual grinder pumps was not accurately calculated or presented. The original estimate of costs for constructing the sewer system using individual grinder pumps for the easterly twelve homes was placed at $3000.00 per lot or a total of $330,000.00 for sewers to the one hundred ten residences in Hurst Hills. This figure assumed some costs later eliminated by use of gravity flow to a south outflow point, but that cost adjustment was immaterial to the disputed question of what force mechanism would be provided for service to plaintiffs' lots. The engineer did supply an estimate described as a "ball park figure" to provide service connections, gravity collection mains, a lift station and a force main to the east area of the twelve homes. The figure was first quoted at $50,000.00 but was later increased to $55,000.00 to $60,000.00.

Plaintiffs' opposition to the plan relegating them to the use of individual grinder pumps was countered by the unwillingness of the village trustees to accept the increased cost of the lift station. To resolve the controversy in which the trustees perceived plaintiffs to reject a sewer system using grinder pumps, the trustees adopted the ordinances here at issue. Village Ordinance No. 82 rescinded the prior Ordinance No. 79 and redefined the boundaries of the Hurst Hills Sewer District to exclude twelve lots in the east portion of the Hurst Hills subdivision, including the lots on which plaintiffs' residences are located. The reconstituted sewer district comprised the balance of the Hurst Hills subdivision consisting of ninety-eight residences, all of which shared a common drainage contour.

Concurrently with the adoption of Ordinance No. 82, the village trustees also passed Village Ordinance No. 83. This latter ordinance created a new sewer district designated as the "One Hundred and Two River Sewer District." The area included in the new district was that of the twelve excluded Hurst Hills lots, among which were the lots occupied by the residences owned by plaintiffs. The name of the district was taken from the river which topographically is associated with drainage from this general location.

Following the adoption of the ordinances dividing the Hurst Hills subdivision into two sewer districts, construction of sewers in the redefined Hurst Hills Sewer District was accomplished. By the date of trial, the sewers had been completed, the ninety-eight homes in the district were connected

to the sewers and special tax bills constituting liens on the real estate in the district had been issued to the construction contractor. The residences of the plaintiffs are still served by septic tanks and no plans for sewers in the One Hundred and Two River Sewer District have been drawn or proposed.

By its judgment, the trial court found the village ordinances which excluded plaintiffs' residences from the sewer district and facilities shared by other homes in the Hurst Hills subdivision to have been unreasonable and an abuse of discretion. The judgment directed that the village and its trustees construct a main sewer, individual connections and a transportation system to convey sewage from plaintiffs' residences to the existing Hurst Hills Sewer District system and that the cost of construction be assessed first against plaintiffs' real estate "on the same square foot basis as the presently existing system was assessed" and the remainder be assessed on a "square foot basis against all of the property owners within the boundaries of Hurst Hills Sewer District as defined in ordinance seventy-nine (79)." The judgment appears superficially to restore the Hurst Hills Sewer District as originally constituted and assesses sewer construction costs against all lots in the subdivision but makes no provision for construction of sewer connections to the three lots excluded from the sewer district by Ordinance No. 82 but not represented by plaintiffs in this action. The judgment further directed that the system for transporting sewage from the area where plaintiffs reside be owned and maintained by the village.

Appellants present four points, restated and summarized as follows:

(1) Definition of geographic boundaries for sewer districts in Hurst Hills presented fairly debatable alternatives. The legislative decision on the subject is therefore immune from judicial oversight.

(2) Necessity for and means to accomplish sewage collection and disposal are matters for municipal decision. Absent fraud or oppression, the court is precluded from abrogating the discretion vested in the municipal authorities.

(3) The Country Club Village trustees have made no decision as to provision for or design of sewers for plaintiffs' homes. The judgment specifying the type of sewer facilities and mandating construction is premature and unwarranted.

(4) Recomposition of the original Hurst Hills Sewer District by realigning the boundaries to include plaintiffs' lots and by assessing the cost of additional construction is prohibited by § 88.852, RSMo 1978.[1]

Consideration of the last mentioned point simplifies, to some extent, the disposition of the parties' contentions as to the other areas of dispute. In inverse order, that point will be discussed first.

The parties in their briefs and argument have assumed that the judgment of the trial court declaring Village Ordinances No. 82 and 83 arbitrary and discriminatory also reinstates Ordinance No. 79 and thus restores the original boundaries of the Hurst Hills Sewer District including plaintiffs' lots therein. Plaintiffs' petition did seek judicial redefinition of the boundaries of Hurst Hills Sewer District to include the property of plaintiffs for the purpose, among others, of apportioning the cost of constructing sewers for plaintiffs among all the property owners in Hurst Hills. If the judgment is construed as altering the boundaries of the Hurst Hills Sewer District where sewers have been built, it is in error and cannot stand.

The present lawsuit was commenced on the first amended petition filed by plaintiffs July 17, 1979. A contract for construction of sewers in the Hurst Hills Sewer District as defined in Ordinance No. 82 excluding the twelve easterly lots was executed by the village trustees and the contractor July 26, 1979. By the date of trial, October 25, 1979, construction of the sewers had been completed and tax bills had been issued to the contractor in payment for the

1. All statutory references are to RSMo 1978.

work. Property owners in the district had either paid their assessment for construction expense or were obligated to do so by reason of the outstanding tax bills which constitute liens on their real estate. § 88.-836.

After sewers have been constructed by assessing the construction cost against property in the district, the boundaries of the district may not be enlarged or reduced. § 88.852 provides, in part, as follows:

" * * * The boundaries of no sewer district that has been paid for wholly by special tax bills shall be altered or changed after any sewer has been constructed in and for the same."

This section is compatible with § 88.834 relating to the establishment of sewer districts: " * * * The district may be subdivided, enlarged or changed by ordinance *at any time previous to the construction of the sewer therein* ; * * * " (Emphasis supplied).

■ The prohibition of the statute is inflexible. A sewer district in which sewers have been built is firmly cast in the mold of the boundaries existing at the date of construction. Whatever may be potential remedies, if any, that are available to municipal residents who claim a sewer district boundary was arbitrarily and discriminatorily set, revision of the district boundary is no longer possible once the sewers are built. Such being the rule, it is immaterial whether the location of the district boundaries was fairly debatable when considered by the municipal legislature. The statutory directive prohibiting alteration of sewer district boundaries under these circumstances necessarily forecloses this avenue of relief by enactment of an ordinance or by judicial decree in an action for declaratory judgment. Favorable disposition of appellants' fourth point renders the first point moot.

While recognizing · the obstacle of the statute, plaintiffs contend, without citation of authority, that the statute is inapplicable because the consequence is to deprive the

parties of a remedy to right the wrong imposed on them by the discriminatory and arbitrary action of the trustees. They argue, again without cited authority, that the pendency of this action while sewer construction progressed in some way operated to suspend the effect of the statute until the litigation was concluded.

Plaintiffs' cause of action asserted under their petition was a declaration of rights under Village Ordinances No. 82 and 83. They claimed entitlement to inclusion in the sewer district as originally established and, thus, invalidation of the multiple sewer districts and Ordinances No. 82 and 83 which created them. By reason of the statutory prohibition against change in the sewer district, however, the dispute over the ordinances became academic as sewer construction progressed. In the interval, plaintiffs made no request that judicial process enjoin the village trustees from contracting for construction of the sewer nor did they seek to have construction suspended while they pursued their claim to be included in the district. When judgment was ultimately rendered October 26, 1979, after the sewers were completed and tax bills had been issued, the court no longer had authority to revise the boundaries of the Hurst Hills Sewer District. If, as the parties have assumed, the judgment does require a realignment of the sewer district lines to include plaintiffs' lots, it is in error.

In fact, while the judgment announces that the municipal action evidenced by the ordinances in question was unreasonable and an abuse of the discretion vested in the trustees, a recomposition of the Hurst Hills Sewer District is not ordered. Instead, the judgment orders that sewers be provided to plaintiffs and that the cost be shared pro rata among property owners in the area originally defined by Ordinance No. 79. The relief provided did not conform to the remedy sought in plaintiffs' petition, a restoration of the original sewer district boundaries.[2]

---

**2.** The parties make no reference to a significant problem latent in the judgment. If literally enforced, the judgment obligates the three lot owners who did not join as plaintiffs in this suit to payment of a pro rata share for sewer construction, but because they are excluded from

The divergence of the relief granted in the judgment from that sought in plaintiffs' petition confuses analysis of the issues. The parties, however, raise no objection on this account. We therefore turn to consideration of appellants' second and third points which generally charge that the trial court has usurped a municipal legislative function by decreeing when and in what form sewers should be provided. In doing so, we express no opinion as to the rights of the three lot owners denied the benefit of sewers but burdened with their cost; and we assume, without so deciding, that judicial action could direct construction of sewers to serve plaintiffs' homes without violating the prohibition of § 88.852.

A complete statutory scheme for providing sewers in cities of the third and fourth class and in towns and villages has been enacted by the legislature. Under § 88.832, the governing body of the municipality establishes a sewer system which may include public, district, joint district and private sewers. In the instance of district sewers, the applicable designation of service here, § 88.834, authorizes sewer construction by the municipality when a majority of property holders residing in the sewer district petition that sewers be provided or when the governing body deems sewers to be necessary for sanitary or other purposes. After sewers have been built, construction costs are taxed, under § 88.836, by assessment against the property located in the district.

The defect in plaintiffs' complaint is that a present necessity for sewers in the area of plaintiffs' residences has neither been alleged nor proved. The infirmity in the judgment is that the cost for sewer construction as ordered is assessed against property outside the district in which the sewers are constructed. Both contravene the statutes cited above which control municipal sewers in towns and villages.

At and prior to the date of trial, plaintiffs had made no complaint about and offered no evidence of sewage disposal problems in the area excluded by Ordinance No. 82 from the Hurst Hills sewers. While other parts of the subdivision were in immediate need of sewers, septic tanks were adequately serving the plaintiffs' residences. Quite apparently, therefore, plaintiffs' action cannot be construed as a charge that the village trustees have not met the governmental function for which they are responsible under § 88.834. There has been no request by plaintiffs as a majority of the property owners in the excluded area that the trustees cause sewers to be constructed in the One Hundred and Two River Sewer District and no need for sewers on account of sanitary or other purposes appears.

■ Plaintiffs' complaint is, in reality, bottomed upon a concern for the future that isolation from their neighbors in a separate sewer district will increase the unit cost to plaintiffs for sewers when and if needed and the value of their land will be depreciated during the interim because they do not have sewers while other homes nearby do. Whether or not the easterly area of the subdivision should have been included in the Hurst Hills Sewer District was a discretionary choice to be made by the village trustees. The legislature has by statute entrusted that function to the municipal authority. The exercise of that discretion is not to be interfered with by the courts unless it is affirmatively shown to have been exercised arbitrarily, fraudulently or oppressively. *City of Washington ex rel. Luth v. Stumpe*, 83 S.W.2d 111 (Mo.App. 1935).

■ The land area where plaintiffs reside differs in two marked respects from the balance of the Hurst Hills subdivision. Topographically, the drainage flows in different directions, thus requiring a mechanical appliance to combine the areas in a gravity sewer system, and the immediate need for municipal sewers was urgent in the one area and of no moment in the other. While reasonable minds could differ on the wisdom of deferring sewage disposal con-

---

the Hurst Hills Sewer District where sewers have been built and are to be provided no

sewers under this judgment, they are precluded from any benefit.

struction in part of the subdivision by the creation of two sewer districts, the choice made cannot be labeled arbitrary, fraudulent or oppressive. In the future, plaintiffs may expect to bear the cost of sewer construction and connection to the Hurst Hills sewers and the expense may be more or less than would have been incurred were the district boundaries to have been differently aligned. Such cost variables do not, however, justify prospective or retrospective judicial intervention in the decision made by the municipal authorities by the adoption of the ordinances in question.

As was noted earlier, the pre-judgment construction of sewers and issuance of tax bills forecloses any alteration of the Hurst Hills Sewer District boundary. The additional sewers which the judgment orders constructed to serve plaintiffs are therefore not within that sewer district. The judgment, however, directs that construction costs be assessed against the land area defined under the revoked Ordinance No. 79 and thus would obligate property owners in the Hurst Hills Sewer District to pay for building sewers outside the district.

■■■ The sewers which the judgment contemplates benefit only the plaintiffs. They are neither public nor joint district sewers within the designations of § 88.832 and are, at best, district sewers. District sewers must be paid for by special assessments against the property within the district. *Union Trust Co. of St. Louis v. Pagenstecher*, 221 Mo. 121, 119 S.W. 1103 (1909); § 88.836. There is no authority to assess property owners in the Hurst Hills Sewer District for sewer construction costs as provided in this judgment and any tax bills so issued would be absolutely void and uncollectible.

We therefore conclude that the judgment is also erroneous on the additional grounds that it abrogates the discretionary authority of the village trustees to determine when and by what means sewer service shall be provided; that no basis appears to hold the action taken by the trustees to have been arbitrary, fraudulent or oppressive; and that the provision for taxing the costs of construction is violative of the statute and is unenforceable.

The judgment is reversed.

All concur.

